

ENTERED
09/14/2012

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO: 12-31184 |
| ATOM INSTRUMENT CORPORATION; | § | CHAPTER 11 |
| dba EXCITRON CORPORATION | § | |
| | § | |
| Debtor(s). | § | JUDGE ISGUR |
| | § | |
| FRANEK OLSTOWSKI, *et al* | § | |
| | § | |
| Plaintiff(s), | § | |
| | § | |
| vs. | § | ADVERSARY NO. 12-3141 |
| | § | |
| PETROLEUM ANALYZER COMPANY, | § | |
| L.P., *et al* | § | |
| | § | |
| Defendant(s). | § | |

## MEMORANDUM OPINION

Franek Olstowski and ATOM Instrument Corporation's ("ATOM")[1] Motion for Summary Judgment, (ECF No. 11), is denied.[2]

### Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a). Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

---

[1] Olstowski is the President and owner of ATOM.

[2] Olstowski and ATOM filed a Motion for Partial Summary Judgment in state court. (ECF No. 11-4). The Motion and a Motion to Reconsider Denial were both denied. (ECF No. 11-7, ECF No. 11-11). The case was then removed to this Court after ATOM filed a voluntary chapter 11 petition in this Court. (ECF No. 1) The Court agreed to rehear the Motion for Summary Judgment, and the parties filed Stipulated Summary Judgment Documents on June 28, 2012. (ECF No. 11).

**Bankruptcy Court's Authority**

This Court may not issue a final order or judgment in matters that are within the exclusive authority of Article III courts.  *Stern v. Marshall*, 131 S.Ct. 2594, 2620 (2011).  The Court may, however, issue interlocutory orders, even in proceedings in which the Court does not have authority to issue a final judgment.  A partial summary judgment is an interlocutory motion, and the constitutional limitations on the Court's authority to enter final judgments are not implicated.  *West v. Peterson (In re Noram Res., Inc.)*, 2012 WL 2571154, at *1 (Bankr. S.D. Tex. July 2, 2012); *see West v. WRH Energy Partners LLC (In re Noram Res., Inc.)*, 2011 WL 6936361, at *1 (Bankr. S.D.Tex. Dec. 30, 2011) (stating that interlocutory motion to dismiss does not implicate constitutional limitations on Court's authority).

**Background**

Franek Olstowski was a consultant for Petroleum Analyzer Company, L.P. ("PAC") from approximately 2001 to 2006.  (ECF No. 11-2 at 3).  On June 15, 2001, Olstowski signed a Consultant Agreement with Antek Instruments, L.P. for personal consulting services (ECF No. 11-2 at 3).[3]  The Consultant Agreement provided that all confidential information, technology, prototypes, and products developed by Olstowski while providing service for Antek would be Antek's exclusive property.  (ECF No. 11-2 at 3).

On September 29, 2003, Olstowski applied to the United States Patent and Trademark Office ("USPTO") for a patent entitled "Apparatus For Trace Sulfur Detections Using UV Fluorescence" ("395 Patent").  (ECF No. 1-1 at 4).  On July 17, 2008, The USPTO granted Olstowski the 395 Patent.  (ECF No. 1-1 at 4).  On October 21, 2004, Olstowski applied to the USPTO for a patent entitled "Combustion Apparatus And Methods For Making And Using

---

[3] Antek merged with PAC in 2004.  PAC is the surviving entity and successor in interest to the Agreement.  (ECF No. 11-2 at 3).

Same" ("381 Patent"). (ECF No. 1-1 at 4). The USPTO granted Olstowski the 381 Patent on August 5, 2008. (ECF No. 1-1 at 4). Olstowski filed an assignment of the 381 and 395 Patents to ATOM with the USPTO on August 17, 2009, and assignment was effective on March 2, 2009. (ECF No. 1-1 at 4).

PAC sued Olstowski and ATOM in state court in 2006 for declaratory relief and damages for breach of contract and conversion ("2006 litigation"). (ECF No. 11-4 at 6). Specifically, PAC's prayer in its arbitration demand requested a declaration that, "PAC is the owner of all technology, prototypes and products developed by Olstowski since June 2001 while providing consultant's service for PAC." (ECF No. 11-4 at 8). However, the 2006 litigation focused on the ownership of excimer technology[4] developed by Olstowski. (ECF No. 11-5 at 8-9). The 2006 litigation was resolved by an Arbitration Award[5] which among other things: (1) declared Olstowski the owner of the excimer technology (ECF No. 11-5 at 9); (2) declared the Consultant Agreement binding on both PAC and Olstowski (ECF No. 11-4 at 89); and (3) omitted any declaration as to whether PAC was the owner of all technology developed by Olstowski between 2001 and 2006. (ECF No. 11-4 at 95).

On August 14, 2009, PAC contacted Olstowski to have Olstowski assign the 381 and 395 Patents to PAC. (ECF No. 11-5 at 11-12). On August 17, 2009, Olstowski recorded an assignment of the 381 and 395 Patents to ATOM. (ECF No. 11-5 at 12). PAC sent a second

---

[4] Excimer technology refers to: (1) technology and methods embodied in the patent applications styled "Improved Ozone Generator with Duel Dielectric Barrier Discharge, Improved Closed-Loop Light Intensity Control and Related Fluorescence Application Method, and Excimer UV Fluorescence Detection; (2) all accompanying drawings, blueprints, schematics and formulas created or drawn by either Olstowski or Virgil Stamps of the application identified or in support of (1) and (2); and (3) issued patents and/or Patent Applications pending entitled: Ozone Generator with Dual Dielectric Barrier Discharge and Methods for Using Same, Improved Closed-Loop Light Intensity Control and Related Fluorescence Application Method, and Excimer UV Fluorescence (as amended). (ECF No. 11-5 at 8-9).

[5] The Arbitration Award was rendered on October 15, 2007 (ECF No. 11-4 at 111), and was confirmed by a State District Court Order on November 6, 2007. (ECF No. 11-4 at 95).

request for assignment on November 1, 2010. (ECF No. 11-5 at 12). Olstowski responded on November 19, 2010 indicating that he was not aware of PAC's assignment request and had previously refused assignment of the 381 and 395 Patents to PAC. (ECF No. 11-5 at 12). PAC responded to Olstowski on December 1, 2010, again asking for assignment of the 381 and 395 Patents. (ECF No. 11-5 at 12).

Following Olstowski's failure to respond, PAC filed a new lawsuit against Olstowski and ATOM in state court in 2011 seeking a declaratory judgment that PAC owned the 381 and 395 Patents pursuant to the Consultant Agreement, and seeking damages for breach of contract and conversion ("2011 litigation"). (ECF No. 13 at 3). Olstowski filed his own complaint on December 21, 2010, requesting a declaratory judgment that ATOM was the owner of the 381 and 395 Patents. (ECF No. 11-5 at 12). The parties agreed to consolidate the causes of action. (ECF No. 11-5 at 12). Olstowski and ATOM filed a Motion for Partial Summary Judgment claiming that *res judicata* prevented PAC from asserting its claims related to the 381 and 395 Patents because the claims were asserted in the 2006 litigation. (ECF No. 11-4 at 15). The Motion for Partial Summary Judgment was denied (ECF No. 11-7 at 2), and rehearing on the motion was also denied. ECF No. 11-11 at 2).

On February 10, 2012, ATOM filed a voluntary chapter 11 petition before this Court. (Case No. 12-31184, ECF No. 1). On March 15, 2012, Olstowski and ATOM removed the 2011 litigation to the Bankruptcy Court. (ECF No. 1). On June 28, 2012, the parties filed Stipulated Summary Judgment Documents. (ECF No. 11).

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Fed. R. Bankr. P. 7056 incorporates Rule 56 in adversary proceedings.

A party seeking summary judgment must demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) an absence of a genuine dispute of material fact. *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

A court views the facts and evidence in the light most favorable to the non-moving party at all times. *Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support the fact.[6] Fed. R. Civ. P. 56(c)(1). The Court need consider only the cited materials, but it may consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court should not weigh the evidence. A credibility determination may not be part of the summary judgment analysis. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). However, a party may object

---

[6] If a party fails to support an assertion or to address another party's assertion as required by Rule 56(c), the Court may (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if, taking the undisputed facts into account, the movant is entitled to it; or (4) issue any other appropriate order. Fed. R. Civ. P. 56(e).

that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  Fed. R. Civ. P. 56(c)(2).

"The moving party bears the burden of establishing that there are no genuine issues of material fact."  *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008).  The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Malacara*, 353 F.3d at 403.  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact.  *Sossamon*, 560 F.3d at 326.  The non-moving party must cite to specific evidence demonstrating a genuine dispute.  Fed. R. Civ. P. 56(c)(1); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986).  The non-moving party must also "articulate the manner in which that evidence supports that party's claim."  *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).  Even if the movant meets the initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

If the non-movant bears the burden of proof of an issue, the movant must show the absence of sufficient evidence to support an essential element of the non-movant's claim.  *Norwegian Bulk Transp. A/S*, 520 F.3d at 412.  Upon an adequate showing of insufficient evidence, the non-movant must respond with sufficient evidence to support the challenged element of its case.  *Celotex*, 477 U.S. at 324.  The motion should be granted only if the non-movant cannot produce evidence to support an essential element of its claim.  *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

## Analysis

Federal courts are bound under the Full Faith and Credit Act by the preclusive effects of a state court decision under state law. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 524 (1986); *Swindle v. Livingston Parish Sch. Bd.*, 655 F.3d 386, 400 (5th Cir. 2011).

There is often difficulty associated with the doctrine of *res judicata* because of confusion between several related theories. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992). Generally *res judicata* refers to a group of related concepts concerning the preclusive effect of final judgments in future litigation. *Id*. Within this general doctrine, there are two principal categories: (1) pure *res judicata*, or claim preclusion; and (2) collateral estoppel, or issue preclusion. *Id*. Claim preclusion prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, could have been litigated in the prior suit. *Id*. Issue preclusion prevents relitigation of specific issues already resolved in a prior suit. *Id*.

### Res Judicata (Claim Preclusion)

The current claim of ownership of the 381 and 395 Patents is not barred by *res judicata*. Under Texas law, a movant asserting the defense of *res judicata* has the burden of presenting sufficient evidence, including judgments and pleadings from the prior suit, to establish that claim preclusion applies. *Walker v. Sharp*, 807 S.W.2d 442, 447 (Tex. App. 1991). *Res judicata* has three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Grp.*, 250 S.W.3d 78, 86 (Tex. 2008). Texas follows the transactional approach to *res judicata*. 837

S.W.2d at 631..  If a subsequent suit arises out of the same subject matter as a prior suit, and with diligence could have been litigated in the prior suit, it will be barred under *res judicata*.  *Id*.

The element pertinent to this motion is the "same claim" element.  There is no question that the 2006 litigation involved the same parties—Olstowski, and PAC—or that the 2006 litigation resulted in a judgment by a court of competent jurisdiction.  The claim regarding the 381 and 395 Patents will be considered the "same claim" if PAC either (i) raised the claim of ownership of the 381 and 395 Patents in the 2006 litigation and lost; or (ii) could have raised the claim of ownership of the 381 and 395 Patents in the 2006 litigation and failed to do so.

### *PAC Raised Claim in Request for Declaratory Judgment*

A court of record has the power to declare rights, status and other legal relations whether or not further relief is or could be claimed.  TEX CIV. PRAC. & REM. §37.003.  The Uniform Declaratory Judgment Act, embodied in § 37.003 et seq., is a procedural device used to decide cases that are already properly within the court's jurisdiction.  *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).  For a party to receive a declaratory judgment, the litigant must have proper standing, requiring that the litigant was threatened with or sustained an actual injury.  *Id*.

In the 2006 litigation, PAC requested a declaration that PAC was the owner of all technology developed by Olstowski from 2001 through 2006.  Such a declaration would implicitly include the 381 and 395 Patents, but PAC's allegations and the course of the litigation focused on the excimer technology.  The Arbitration Award did not explicitly address PAC's ownership of all technology, but ordered that all relief not granted in the Award should be denied, which included denial of PAC's request that it be declared the owner of all technology developed by Olstowski.

This denial is not equivalent however to declaring that Olstwoski is the owner of all of the technology he developed from 2001 through 2006. Nor is the denial equivalent to declaring that PAC has no ownership rights in any of the technology Olstowski developed, especially in light of the fact that the Arbitration Award found the Consultant Agreement to be valid. The only technology that the Arbitration Award found to be owned by Olstowski was the excimer technology. The Arbitration Award provides that assuming *arguendo* that the Consultant Agreement gave PAC an ownership interest in the excimer technology, PAC's conduct with Olstowski waived any such interest. (ECF No. 11-4 at 89). The Arbitration Award does not provide any other basis for Olstowski's ownership of the excimer technology besides waiver by PAC.

If the arbitration panel, by necessity, must have determined that PAC was not the owner of the 381 and 395 Patents in order to reach its decision, then the *res judicata* effect of such a determination would be relatively strong. However, the burden of proof on the *res judicata* effect of the prior ruling rests on ATOM and Olstowski. 807 S.W.2d at 447.

If the Court is unable to determine the basis of the prior ruling, the Court must examine whether there are alternative bases under which the prior ruling might have been issued.

For example, it is possible that the arbitration panel decided that there was no actual threatened or sustained injury, and therefore PAC lacked the standing to receive a declaratory judgment that it is the owner of the 381 and 395 Patents. If a lack of standing is the basis for the decision, this would have very little *res judicata* effect. Olstowski and ATOM as the moving parties have the burden of proving the *res judicata* effect of the prior decision, and without an articulated basis for the panel's decision they are unable to meet their burden.

If the arbitration panel determined (hypothetically) that PAC was neither threatened with nor sustained an actual injury with respect to the 381 and 395 Patents, the *res judicata* effect of the prior judgment would simply be that as of the date of the judgment, PAC could not obtain a declaration of its rights pending a future event that threatened or caused PAC to sustain an actual injury. In that instance, the preclusive effect would be minimal because the injury alleged in a future suit by PAC could be based solely on actual or threatened injuries from post-judgment conduct.

Conversely, if the arbitration panel determined (hypothetically) that PAC could not obtain the declaration because PAC had no ownership in the 381 and 395 Patents, the *res judicata* effect would be much broader. In that instance, PAC would be required to demonstrate a post-judgment event that vested PAC with ownership of the 381 and 395 Patents.

The Court could hypothesize as to other reasons for the prior decision, but there is little use in doing so.

Alas, we cannot tell. Neither the arbitration panel's decision nor the state court judgment inform the Court of the basis of the decision. Because the burden of proof is on ATOM and Olstowski, the Court must find that they have failed to sustain *res judicata* as a bar to the present lawsuit.

### *Changed Facts in the Interval*

Facts in the interval between the 2006 and 2011 litigation prevent the operation of *res judicata*. A judgment in one suit will not operate as *res judicata* to a subsequent suit on the same question between the same parties if in the interval facts have changed or new facts have arisen that may alter the legal rights of the parties. *Marino v. State Farm Fire & Casualty Insurance Company*, 787 S.W.2d 948, 949-950 (Tex. 1990); *see also Hilltop Baptist Temple, Inc. v.*

*Williamson County Appraisal District*, 995 S.W.2d 905, 909 (Tex. App. 1999) (discussing that in *Marino*, the prior judgment retained its integrity, and allowing a new cause of action did not reverse, void or invalidate the previous judgment).

Even if Olstowski and ATOM had met their burden of proof, the effect of *res judicata* would only apply to claims that were ripe as of the date of the prior judgment. *Res Judicata* would not bar subsequent claims that arose after the date of the prior judgment. Olstowski was deposed in 2007 in the course of the 2006 litigation ("2007 Deposition"). (ECF No. 12 at 10). In the 2007 Deposition Olstowski asserted that he was the owner of the 381 and 395 Patents. Olstowski and ATOM argue that the 2007 Deposition put PAC on notice of Olstowski's ownership claim, and therefore PAC should have raised the claim in the 2006 litigation. (ECF No. 12 at 10). PAC counters that its claims related to the 381 and 395 Patents are based solely on Olstowski's wrongful conduct in late 2009 and 2010 when Olstowski refused to assign the 381 and 395 Patents to PAC and instead assigned them to ATOM. (ECF No. 13 at 3).

Accepting as true that the 2007 Deposition put PAC on notice of Olstowski's ownership claim of the 381 and 395 Patents, Olstowski had not yet committed the alleged breach of the Consultant Agreement that gave rise to the 2011 litigation. Even if Olstowski indicated that he believed he was the owner of the 381 and 395 Patents in the 2007 Deposition, he still had the opportunity to assign the 381 and 395 Patents to PAC pursuant to the Consultant Agreement. Therefore a claim for breach of contract, or a need to have ownership rights in the 381 and 395 Patents declared may not have existed at the time judgment was rendered in the 2006 litigation. Such claims may not have existed until 2009 when Olstowski refused to assign the 381 and 395 Patents to PAC and instead assigned them to ATOM. Allowing a new cause of action regarding the 381 and 395 Patents will not reverse, void or invalidate the prior judgment. Such a decision

11 / 13

comports with Olstowski's ownership rights in the excimer technology, and does not invalidate the prior determination that PAC could not obtain a declaration as to ownership of all technology developed by Olstowski from 2001 through 2006.

**Collateral Estoppel**

The issue of ownership of the 381 and 395 Patents is not barred by collateral estoppel. Under Texas law, relitigation of an issue is barred by collateral estoppel if the facts relevant to the issue were (1) fully and fairly litigated in a prior action; (2) essential to the judgment in the prior action; and (3) the parties were adversaries in the prior action. *Mower v. Boyer*, 811 S.W.2d 560, 563 (Tex. 1991). To be given estoppel effect the prior adjudication of an issue must be adequate and firm. *Id*. at 562. The factors relevant to whether adjudication was adequate are (1) whether the parties were fully heard; (2) whether the decision is supported with a reasoned opinion, and (3) whether the decision was subject to appeal or was in fact reviewed on appeal. *Id*.

The only requirement of issue preclusion that is satisfied in the instant case is that the parties were adversaries in the first action. The issue of ownership of the 381 and 395 Patents was not fully and fairly litigated in the 2006 litigation. Olstowski and ATOM assert that PAC was put on notice of Olstowski's ownership claim based on Olstowski's remark in the 2007 Deposition that he believed he was the owner of the 381 and 395 Patents. Neither party claims that the 381 and 395 Patents were otherwise put in issue. Neither the Court nor the arbitration panel issued findings of fact and conclusions of law. There are no issues that were firmly decided that could result in collateral estoppel.

The issue of the ownership of the 381 and 395 Patents was also not essential to the prior judgment. As set forth above, it is unclear what was essential to the prior judgment. The

conclusion that Olstowski is the owner of the excimer technology was largely based on the fact that PAC's conduct resulted in a waiver of any rights it might have in the excimer technology. Although the Arbitration Award did not declare PAC the owner of all of the technology Olstowski developed, it did not question the validity of the Consultant Agreement. Because the Court has no detailed basis for the arbitration panel's decision, and because there are alternative plausible bases for the decision, issue preclusion will not bar the relitigation of the issue of ownership of the 381 and 395 Patents.

## Conclusion

The Court will enter an order in accordance with this Memorandum Opinion.

SIGNED **September 14, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE